**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone: (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Ian A. Henderson, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>San Diego Sunrise Management Company, a California corporation,<br><br>Defendant. | Case No.<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff Ian A. Henderson ("Plaintiff"), individually and on behalf of all others similarly situated, for his Complaint against Defendant San Diego Sunrise Management Company ("Sunrise") alleges as follows:

## I.  NATURE OF THE CASE

1. Plaintiff brings this action against Sunrise for its unlawful failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and its unlawful failure to pay wages due in violation of the Arizona Wage Statute, A.R.S. § 23-350 *et seq.*

2. This action is brought as a collective action pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime compensation, liquidated damages, statutory penalties and damages owed to Plaintiff and all others similarly situated. This lawsuit is also brought as a class action under Federal Rule of Civil Procedure 23, to recover unpaid compensation and treble damages resulting from Sunrise's violation of the Arizona Wage Statute. For collective action and class action purposes, the proposed Class consists of:

> All current and former Sunrise employees, regardless of actual title, who worked in Arizona in the last three years and whose job duties include providing customer service and support to residents and prospective residents at property sites and processing rental applications and maintenance service ("Leasing Professionals").

3. For at least three (3) years prior to the filing of this action (the "Liability Period"), Sunrise had and continues to have a consistent policy and practice of suffering or permitting employees who worked as Leasing Professionals, including Plaintiff, to work in excess of forty (40) hours per week, without timely paying them proper overtime compensation as required by federal and state wage and hour laws, as well as failing to timely pay for all wages due, including bonuses, in violation of state law. Plaintiff seeks to recover unpaid wages, including unpaid overtime compensation, interest thereon, statutory penalties, reasonable attorneys' fees and litigation costs on behalf of himself and all similarly situated current and former Leasing Professionals. Plaintiff and all similarly situated current and former Leasing Professionals who may opt-in pursuant to 29 U.S.C. § 216(b) also seek liquidated damages.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.     Plaintiff's state law claim is sufficiently related to the FLSA claim that it forms part of the same case or controversy.  This Court has supplemental jurisdiction over Plaintiff's claim under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of Arizona within this District.  Plaintiff was employed by Sunrise in this District.

### III.  PARTIES

7.     At all times relevant to the matters alleged herein, Plaintiff Ian A. Henderson resided in the State of Arizona in Maricopa County.

8.     Plaintiff was a full-time, non-exempt employee of Sunrise employed as a Leasing Professional at a property managed by Sunrise in Arizona from December 13, 2021 until May 12, 2022.

9.     As a Leasing Professional for Sunrise, Plaintiff was paid an hourly wage of $18.00 per hour plus non-discretionary bonuses calculated using a numerical formula in connection with the properties he leased.

10.    Plaintiff's Consent to be a Party Plaintiff and Opt In to Lawsuit pursuant to 29 U.S.C. § 216(b) is attached as Exhibit A, affirming his consent to opt-in to this action and pursue his unpaid wages under the FLSA and act as the representative Plaintiff in the action on behalf of the Leasing Professionals.

11.    Upon information and belief, Defendant San Diego Sunrise Management Company is a California corporation authorized to do business in Arizona.

12.    Sunrise hires Leasing Professionals like Plaintiff at properties in Arizona to service properties managed by the Company.  Plaintiff and the other similarly situated Leasing Professionals are employees as defined in 29 U.S.C. § 203(e)(1) and are non-exempt employees under 29 U.S.C. § 213(a)(1) and A.R.S. § 23-350(2).

13.    At all relevant times, Sunrise was an employer as defined by 29 U.S.C. § 203(d) and A.R.S. § 350(3).

14. At all relevant times, Sunrise has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

## IV.  FACTUAL BACKGROUND

15. Sunrise provides property management services for apartment communities throughout Arizona, California, and Nevada.

16. Sunrise employs numerous Leasing Professionals at the many properties it manages in Arizona servicing prospective and current residents.

17. Plaintiff was employed by Sunrise as a Leasing Professional in Arizona from December 13, 2021 until May 12, 2022.

18. As a Leasing Professional, Plaintiff's responsibilities consisted of showing apartments and the entire community to prospective residents, securing commitments and deposits from prospective residents, and providing customer support to residents and prospective residents at the property site, including answering telephones, greeting customers, performing move-in procedures, and processing rental applications and maintenance service requests.

19. Plaintiff was paid an hourly wage of $18.00 per hour working as a Leasing Professional.  He was also to receive non-discretionary bonuses based on a numerical formula set by the company related to apartments he leased.

20. During the typical week, Plaintiff worked Monday through Friday.

21. At all times, Plaintiff's non-discretionary bonuses comprised less than one half of his total compensation, and he was eligible for overtime as a non-exempt employee under the FLSA.

22. Sunrise failed to pay Plaintiff the bonuses he earned prior to his resignation from the Company.

23. Plaintiff complained to his supervisor that he was not being paid correctly but the issue was not properly rectified, causing him not to be paid all the wages he was due.

24. Rather, Sunrise improperly stated that the Company had discretion as to whether to pay Plaintiff bonuses he had earned once he put the Company on notice that he was resigning his employment there.

25. However, Plaintiff had a reasonable expectation to be paid the bonuses that had accrued and became due and owing prior to the conclusion of his employment with Sunrise.

26. For example, Plaintiff earned bonuses in April 2022, which should have been paid out in May 2022.

27. Sunrise failed to pay Plaintiff the bonuses he earned and that had become due because Plaintiff put in his notice that he was leaving employment with Sunrise effective May 12, 2022.

28. In addition, Sunrise failed to pay Plaintiff all the overtime wages he was due during his employment.

29. For example, for the pay period from January 1, 2022 until January 15, 2022, Plaintiff was paid $18.00 per hour for 80 hours and $27.00 per hour for 5.13 hours of overtime. During that same pay period, Plaintiff earned a $300 non-discretionary bonus. However, Sunrise failed to calculate his overtime rate to include the non-discretionary bonus he earned in violation of the FLSA.

30. Similarly, for the pay period from February 1, 2022 until February 15, 2022, Plaintiff was paid $18.00 per hour for 88.93 hours and $27.00 per hour for 3.58 hours designated on the pay stub as overtime. During that same pay period, Plaintiff earned a non-discretionary bonus of $500. Sunrise failed to pay Plaintiff time and a half his regular rate of pay for the hours of overtime he worked this period, by not accounting for his non-discretionary bonus when calculating his overtime rate in violation of the FLSA.

31. There were also times when Sunrise paid Plaintiff his regular hourly rate for hours worked over forty in a workweek. For example, for the pay period from March 16, 2022 until March 31, 2022, Plaintiff was paid $18.00 per hour for 99.63 hours and $27.00 per hour for 2.3 hours designated on the pay stub as overtime. Sunrise improperly calculated

overtime Plaintiff worked at his straight hourly rate of $18.00 for hours he should have been paid at the proper overtime rate required by the FLSA.

32. These examples demonstrate how Sunrise failed to pay Plaintiff all the overtime he was due, including overtime that was properly calculated as required by the FLSA.

33. There were numerous other pay periods in which Sunrise failed to pay Plaintiff overtime at the rate required by the FLSA.

34. Despite having worked numerous hours of overtime, Plaintiff was not paid proper overtime wages at a rate of one and one-half times his regular rate of pay for hours worked over forty in a work week.

35. Sunrise also failed to timely pay Plaintiff all the wages that he was due in violation of the Arizona Wage Statute, including non-discretionary bonuses he earned and hours and wages that were improperly calculated by Sunrise.

36. For example, Plaintiff was due numerous non-discretionary bonuses for apartments he leased prior to the conclusion of his employment on May 12, 2022. When he put in his notice of resignation, he notified Sunrise of the non-discretionary bonuses he expected to be paid on the next regular pay day in accordance with Arizona law.

37. Rather than pay Plaintiff on the next regular pay date as required by Arizona law when an employee quits, Sunrise did not issue a final paycheck to Plaintiff until June 6, 2022, which is after the next regular pay day that would have occurred in late May 2022.

38. In addition to paying Plaintiff his final paycheck late, Sunrise also failed to pay Plaintiff wages he was due with his final paycheck. Plaintiff's paystub dated June 6, 2022 only accounted for hours worked in accordance with his hourly rate, and Sunrise failed to pay Plaintiff for numerous non-discretionary bonuses he had earned during his employment.

39. For example, Plaintiff earned non-discretionary bonuses based on properties he leased in April and May of 2022. However, Sunrise did not pay him for the bonuses he had earned during his employment.

40. When Plaintiff inquired about the missing bonuses that he had earned and had accrued prior to the conclusion of his employment, Sunrise stated that it had a policy of not paying out bonuses that Leasing Professionals earned during their employment if the employee had left the company before they received their paychecks that were to include the bonuses. This occurred even when the employee had earned the bonuses and they had become due and owing prior to the Leasing Professional's departure from the Company.

41. In addition, Sunrise failed to timely pay numerous hours of overtime Plaintiff earned during his employment in violation of federal and Arizona law.

42. Plaintiff's duties, hours and compensation are indicative of the similarly situated Leasing Professionals.

43. Sunrise's improper policies and compensation practices applied to Plaintiff and all similarly situated Leasing Professionals he seeks to represent.

44. Sunrise provided its Leasing Professionals, including Plaintiff, with written policies and procedures uniformly applicable to all Leasing Professionals governing the compensation practices applicable to them.

45. All the Leasing Professionals are uniformly subject to the same unlawful compensation practices that Plaintiff was subject to during his employment at Sunrise.

## V.  COLLECTIVE ACTION ALLEGATIONS

46. Plaintiff brings his claim under the FLSA, 29 U.S.C. § 201 *et seq.*, as a collective action. Plaintiff brings this action on behalf of himself and others similarly situated, properly defined in paragraph 2 above.

47. Sunrise's illegal overtime wage practices were widespread with respect to the proposed Class. The failure to pay proper overtime was not the result of random or isolated individual management decisions or practices.

48. Sunrise's overtime wage practices were routine and consistent. Throughout the Liability Period, employees regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

49. Other Leasing Professionals performed the same or similar job duties as Plaintiff. Moreover, Leasing Professionals regularly worked more than forty hours in a workweek. Accordingly, the employees victimized by Sunrise's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

50. Sunrise's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action. Thus, Plaintiff's experience is typical of the experience of the others employed by Sunrise.

51. All Leasing Professionals, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40). Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

## VI.  CLASS ACTION ALLEGATIONS

52. The state law claims under the Arizona Wage Statute are brought as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3). The Class is defined in paragraph 2 above.

53. Throughout the Liability Period, Sunrise has employed many Leasing Professionals in Arizona. The Class is so numerous that joinder of all members is impracticable. Members of the Class can readily be identified from business records maintained by Sunrise.

54. Proof of Sunrise's liability under the Arizona Wage Statute involves factual and legal questions common to the Class. Whether Sunrise paid Class members the proper wages due in accordance with A.R.S. §§ 23-351, 23-353, 23-355 is a question common to all Class members, including but not limited to whether they were paid all the non-discretionary bonuses and other wages earned in the time required by Arizona law.

55. Like Plaintiff, all Class members worked without being timely paid statutorily required wages. Plaintiff's claim is therefore typical of the claims of the Class.

56. Plaintiff has no interest antagonistic to those of other Class members and has retained attorneys who are knowledgeable in wage and hour and class action litigation. The interests of Class members are therefore fairly and adequately protected.

57. This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

58. In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Arizona Wage Statute recognizes that employees who are denied their wages often lack the ability to enforce their rights against employers with far superior resources. Further, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it difficult for members of the Class to individually redress the wrongs done to them.

59. Plaintiff's Arizona Wage Statute claim is easily managed as a class action. The issue of liability is common to all Class members. Although the amount of damages may differ by individual, the damages are objectively ascertainable and can be calculated in a straightforward manner.

## VII.  COUNT ONE

**(Failure to Pay Overtime Wages - FLSA - 29 U.S.C. § 207 *et seq.*)**

60. Plaintiff, on behalf of himself and all those similarly situated, incorporates by reference all of the above allegations as though fully set forth herein.

61. Plaintiff and the Leasing Professionals are non-exempt, hourly employees entitled to the statutorily mandated overtime pay according to the FLSA.

62. Sunrise was an employer pursuant to 29 U.S.C. § 203(d).

63. Sunrise failed to comply with 29 U.S.C. § 207 because Plaintiff and the Leasing Professionals worked for Sunrise in excess of forty hours per week, but Sunrise failed to pay them for those excess hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA.

64. The work was performed at Sunrise's direction and with Sunrise's knowledge.

65. Sunrise's failure to pay overtime to Plaintiff and the Leasing Professionals was willful. Sunrise knew Plaintiff and the Leasing Professionals work overtime but failed to properly pay overtime wages. Sunrise had no reason to believe its failure to pay overtime was not a violation of the FLSA.

66. Plaintiff and the Leasing Professionals are entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees.

## VIII.  COUNT TWO

**(Failure to Pay Timely Wages Due - Arizona Wage Statute**

**A.R.S. § 23-350 *et seq.*)**

67. Plaintiff, on behalf of himself and all those similarly situated, incorporates by reference all of the above allegations as though fully set forth herein.

68. At all material times hereto, Plaintiff and the Leasing Professionals were employed by Sunrise within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Wage Statute.

69. Sunrise was aware of its obligation to pay timely wages pursuant to A.R.S. §§ 23-351-353.

70. Sunrise was aware that, under A.R.S. §§ 23-351-353, it was obligated to pay all wages due to Plaintiff and the Leasing Professionals.

71. Sunrise failed to timely pay Plaintiff and the Leasing Professionals wages they are due without a good faith basis for withholding the wages.

72. Sunrise has willfully failed and refused to timely pay wages due to Plaintiff and the Leasing Professionals. As a result of Sunrise's unlawful acts, Plaintiff and the Leasing Professionals are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

## IX.  REQUESTED RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays:

A. For the Court to order Sunrise to furnish to Plaintiff's counsel a list of the names and contact information of all current and former Leasing Professionals who worked for a Sunrise in Arizona within the past three years;

B. For the Court to authorize Plaintiff's counsel to issue notice at the earliest possible time to all current and former Leasing Professionals who worked for Sunrise in Arizona within the past three years immediately preceding this action, informing them that this action has been filed and the nature of the action, and of their right to opt-in to this lawsuit if they worked during the Liability Period;

C. For the Court to declare and find that Sunrise committed one or more of the following acts:

  i. violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages to Plaintiff and persons similarly situated who opt-in to this action;

  ii. willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

  iii. willfully violated the Arizona Wage Statute by failing to timely pay all wages due to Plaintiff and persons similarly situated;

D. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

E. For the Court to award interest due and accruing from the date such amounts were due;

F. For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

G. For the Court to award restitution;

H. For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b) and other applicable law;

I. For the Court to award pre- and post-judgment interest;

J. For the Court to award Plaintiff's resulting consequential damages, in an amount to be proven at trial; and

K.  For such other relief as the Court deems just and proper.

## X.  DEMAND FOR JURY TRIAL

73.  Plaintiff, on behalf of himself and all others similarly situated, hereby demands trial of his claims by jury to the extent authorized by law.

DATED:  July 14, 2022.

**YEN PILCH ROBAINA & KRESIN PLC**

By   */s/ Ty D. Frankel*
Ty D. Frankel
6017 N. 15th Street
Phoenix, Arizona 85014

**YEN PILCH ROBAINA & KRESIN PLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

Attorneys for Plaintiff